## Case No. 12,393.

### In re SAWYER et al.

#### [2 Hask. 153.] [1]

#### District Court, D. Maine. June, 1877.

BANKRUPTCY—EXEMPTION—MAIN STATUTE — LIFE INSURANCE POLICY.

1. A policy of life insurance, subject to annual premiums is exempted to the bankrupt under Rev. St. U. S. § 5045, as properly exempt from execution in Rev. St. Me. 1871, c. 49, § 65, subject to the assignee's lien for so much of two year's premiums as exceeds $150 per year, even though the assured borrowed the money to pay these premiums by pledging the policy therefor.

2. The assignment of a policy of life insurance to secure a bona fide loan thereon is valid.

3. The lapsing of a policy for nonpayment of premiums due after the commencement of bankrupt proceedings does not defeat the title of the assignee to the policy.

4. A paid-up policy of life insurance is not exempt to the assured, a bankrupt, under Rev. St. U. S. § 5045, and Rev. St. Me. 1871, c. 49, § 65, but goes to his assignee in bankruptcy.

[In the matter of F. O. Sawyer and John E. Sawyer, bankrupts.] Certificate of facts from Mr. Register Fessenden, touching the re-

---

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

fusal of an assignee to set apart to the bankrupts policies of life insurance upon their lives.

Thomas H. Haskell, for bankrupts.
Henry W. Swasey, for assignee.

FOX, District Judge. Each of the bankrupts at the date of commencement of proceedings in bankruptcy, February 10, 1877, held policies of insurance on their lives, which they claim to be exempted as assets under the provisions of the bankrupt law and the statutes of Maine. The assignee, not assenting to these views, and having declined to set apart the policies as thus exempt, a hearing was had before a register, who has certified the facts before me for my decision thereon.

The policy on the life of F. O. Sawyer was issued April 5, 1872, by the Etna Life Insurance Company for the sum of $3,600, payable at the expiration of ten years, or at the death of the party, if earlier. The annual premium called for by the terms of the policy was $377.65 to be paid on or before April 6th, in each year.

The premium due April 5, 1877, was not paid, and it is claimed that thereby the policy lapsed; but in that case, the insured is entitled from the cash accumulations and paid-up insurance to a paid-up policy of about $1,800, upon surrender of the other policy within twelve months from April 5th.

The premium for 1875 was $341.81; for 1876, $333.17, which was paid by a loan made by the agent of the company, Dewey, to Sawyer, he assigning the policy as collateral security. The policy lapsed April 5, 1876, but was renewed June 5th of that year.

By Rev. St. § 5045, it is provided that "there shall be exempted to the bankrupt such property as is exempted from levy and sale on execution or other process or order of any court by the laws of the state in which the bankrupt had his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount allowed by the laws and constitution of each state as existing in the year 1871; * * and in no case shall the property hereby excepted pass to the assignee, or the title of the bankrupt thereto be impaired or affected by any of the provisions of this title, and the determination of the assignee shall, on exception taken, be subject to the final decision of the said court."

By Rev. St. Me. c. 49, § 65, it was enacted that all life policies and money due thereon are exempt from attachment and all claims of creditors during the life of the insured, when the annual cash premium paid does not exceed $150; but when it exceeds that sum and the premium was paid by the debtor, his creditors have a lien on the policies for such sum. over $150 per year. as the debtor has paid for ten years, subject to any pledge or assignment thereof made in good faith.

The rights of the assignee are subject to the claims of Dewey, as there is nothing to impeach the fairness of that assignment.

The fact, that the premium has not been paid since the commencement of bankruptcy proceedings, can not affect the rights of the assignee, as his rights are dependent on the condition of things February 10th, the date of filing the petition in bankruptcy. Whether he can, by reason of the non-payment of the premium which fell due April 5th, be deprived of all benefit under the policy is not made the subject matter of decision, but it is what were the rights of the bankrupt and assignee on the tenth day of February last.

This policy, as it appears to the court, is within the operation of the act, and was to all intents a life policy, with the burden of annual premiums then attached to it. The fact, that, if the party should continue to live the ten years and pay up all his premiums, he would then be entitled to the amount insured. is not sufficient to change the nature of the instrument so as to withdraw it from the exemption. If he died before the ten years, the amount was thereby payable, thus depending on the life of the party so long as the premiums were to be paid, whether the amount should become payable before the expiration of the ten years or not. For the ten years at least, it was a life policy, the time of payment being wholly contingent on the death of the insured.

The premiums for two years in excess of $150, therefore, belong to the estate, and the bankrupt is entitled to have a release from the assignee of all interest in the policy on payment of this sum. It is claimed that the premium for 1876 was paid by Dewey and not by the bankrupt; but certainly the legal result of that proceeding was merely a loan of the requisite amount to meet the premium. made to the bankrupt by Dewey, and the policy pledged in payment. As between the bankrupt and the company the premiums are paid by the bankrupt, and it is of no consequence from what source he obtained the means of payment, whether from money he had held a long time, or by him then borrowed for that purpose. It was his funds, and the payment was made by him, and the liabilities of his estate are thereby increased to that extent to share any dividend which may be declared.

It is further claimed that the premiums paid within two years are alone exempt. No such restriction is found in the Maine statutes. It is "such sum over $150 as the debtor has paid for two years," not within two years. The court can only construe this as subjecting to the claims of the creditors two years' premiums less $150 per year.

FOX, District Judge. The claim of John E. Sawyer is somewhat different. The policy he held was a paid up policy of $3,170, payable in five years from May 17, 1873, the consideration for it being the surrender of a policy of $5,000. No annual cash premiums were pay-

able on this policy, and as it seems to the court, this policy therefore was not within the language or intent of the statute. Only one class of policies are thus exempted, viz., those which call for a premium annually, whereby the estate of the insured is diminished to the extent of the premium only; and the statute was designed to, and by its language certainly does not exempt a policy which has been procured by a single payment of a large amount, thereby making great inroads upon the estate of the insured. The statute does not reach such a case as the present, of a paid up policy which has never been burdened with annual premiums. The action of the assignee in relation to the policy of John E. Sawyer, in declining to exempt the same, is therefore approved and affirmed.