[Kimball, et al. v. Cunningham Hardware Company, et al.]

# Kimball, *et al. v.* Cunningham Hardware Company, *et al.*

## *Bill by Creditors to Subject Life Insurance.*

(Decided April 22, 1915. 68 South. 309.)

1. *Exemptions; Insurance; Rights of Creditors.*—Where the policies stipulated that the insurer would pay the insured, personally certain sums upon the expiration of a given number of years after the policies were issued, the insured thus reserving to himself the benefit thereunder, and the creditors of the insured after his death filed a bill to reach the proceeds of the policies, the bill alleging that deceased was indebted to them at and before his death, that he was insolvent and had paid premiums up to the time of his death, such bill was demurrable for failing to show affirmatively that the money was liable for the debt, or to defeat the claim of the beneficiary to the proceeds, such bill containing no allegation that the premiums paid by the deceased were in excess of the $750 allowed by section 4502, Code 1907.

2. *Same; Construction; Statute.*—Exemption statutes, especially those allowing exemptions in favor of the wife and children as against the creditors of the husband and father, must be construed in pari materia with the frauds and perjury statute, and the statutes as to fraudulent conveyance.

3. *Same; Insurance; Rights of Creditor.*—The proceeds of a policy of life insurance are not removed from the protection of the provisions of § 4502, Code 1907, and brought within the provisions of section 4287, Code 1907, by a stipulation in the policy that after a certain number of years insured was to be paid personally part of the proceeds thereof, where the contingency provided for had not happened.

(McClellan, Somerville and Thomas, JJ., dissent in part.)

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Cunningham Hardware Company and others, against Mary E. Kimball and others, to subject to their demand as creditors the proceeds of a certain life insurance policy. Decree for complainants and respondents appeal. Reversed and rendered.

The complainants are alleged to be creditors of Lee R. Kimball, deceased, and they seek by this bill to sub-

[Kimball, et al. v. Cunningham Hardware Company, et al.]

ject to their claims the proceeds of certain life insurance policies, $55,000 in amount, which had been collected by the widow in her own right as the beneficiary named in the policies. With reference to the dates of the claims asserted, it is allegd simply that said Kimball was indebted to complainant at or before the date of his death, and it is shown that the claims filed against his estate aggregate $27,000, while the assets reported by the administrator amount to less than $10,000. The allegation is that the said Kimball was insolvent at the time of his death, and had been so for some time prior thereto, and that his estate is now wholly insolvent. It appears that of the three policies in question, two were what is known as "20 payment life" and one as "19 payment life," and that each of said policies contained a stipulation whereby each of said insurance companies undertook and bound itself to pay to said Lee R. Kimball personally certain amounts upon the expiration of a given number of years after the issuance of said policies; the said Lee R. Kimball reserving unto himself a benefit in said policy. It is alleged also that said Kimball paid the premiums on all of said policies during his lifetime, but the date of the policies is not shown other than by the allegation that they were taken out prior to his death. The bill charges on information and belief that L. R. Kimball, who is the administrator, and who is made a respondent in his representative capacity, has the charge and management of said insurance proceeds, and has bought a large amount of real estate with a portion of it, and taken a title in his own name.

FREDERICK G. BROMBERG, for appellants.

FRANCIS J. INGE, and SHELTON SIMS, for appellee.

SOMERVILLE, J.—(1) The theory upon which complainants seek to destroy Mrs. Kimball's right to the proceeds of the three insurance policies is founded solely upon the allegation of the bill that her husband, the assured, was entitled by the terms of the policies to personally receive some sort of pecuniary benefit at stated times. The theory is that the reservation of any benefit in favor of the husband in a life insurance policy taken out and kept up by him for the benefit of his wife and children, who are named as beneficiary therein, reserves the policy from the protection of section 4502 of the Code, and renders its proceeds subject to the liabilities of the husband, whether the annual premiums paid be more or less than $750, the amount which the statute allows to be appropriated by the husband. The authority cited and relied upon by complainants in support of this proposition is the case of *Tompkins v. Levy,* 87 Ala. 263, 6 South. 346, 13 Am. St. Rep. 31, in connection with section 4287 of the Code.

In *Tompkins v. Levy,* the policy was payable to the wife of the assured, "her heirs, executors, or assigns," and it was held that her interest terminated with her death before her husband's and that the joint children could not claim the insurance money, as against the father's creditors, because they were not named as the alternative beneficiaries in the policy, though they might under the statute (section 2733, 2734, Code 1876) have been so named. The court, however, went further, and said: "There is another feature about this policy which stamps it as fraudulent against creditors, and takes it out of the protection of the statute. It is the interest which Milton Brasfield reserved to himself, in the event of his surviving for 15 years after its issue. It is expressly provided that after the expiration of this number of years, on surrender of the policy, none of its

conditions having been violated, the company would pay to Brasfield himself, 'his heirs, executors, or assigns,' 'the equitable value of the policy, 'As an endowment in cash.' It is obvious that the interest of Mrs. Brasfield in this policy was contingent upon her husband's dying before the expiration of 15 years from date, and, had he survived for this length of time, the cash value of the policy could have been claimed by him free from any trust in favor of the wife.—*Levy v. Van Hagen,* 69 Ala. 17. That a reservation of this kind would be such a locking up of the debtor's property from creditors for his own beneficial use as to evince an intent to hinder, delay, or defraud creditors has never been doubted since the doctrine settled in *Tyne's Case,* decided near three centuries ago."

It has been previously held by this court that the procurement of insurance by the assured in favor of another is a gift and conveyance of property (*Fearn v. Ward,* 80 Ala. 555, 560, 2 South. 114) ; and we have here, it seems, an application of section 4287 of the Code to investment life insurance. That section is: All deeds of gift, all conveyances, transfers, and assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, are void against creditors existing or subsequent, of such person."

We think, however, that the bill of complaint in the instant case does not bring it within the principle declared in *Tompkins v. Levy,* nor within the purview of the statute quoted. Construing its allegations more strongly against the pleader, it shows only that the insurance companies were to pay to Kimball certain sums of money directly, and at all events, not in commutation of the insurance contract in favor of his wife, but in addition thereto. This was not the locking up of

money under the color of a gift or transfer to another, and was in no sense or degree a fraud upon the creditors; nor was the interest of Mrs. Kimball contingent upon the death of the assured within any particular period.

We cannot surmise what may be the actual provisions of the policies in this regard, but the bill does not show enough to defeat the claim of Mrs. Kimball as the beneficiary named therein; and, in the absence of any allegation that the annual premiums paid by the debtor, Kimball, were in excess of $750, as allowed by the statute, the bill is subject to the grounds of demurrer which point out these respective omissions.—*Felrath v. Schonfield,* 76 Ala. 199, 204, 52 Am. Rep. 319. This is not a matter of claiming exemptions, as in the case of *Kinney v. Reeves,* 142 Ala. 604, 39 South. 29; on the contrary, the complainants are seeking to subject to their debts money to which Mrs. Kimball has a clear legal title, and prima facie a clear legal right. Hence their bill must affirmatively show that the money is liable to their debts. So far as the question of jurisdiction is concerned, the bill is properly filed; and the relief prayed may be properly granted upon an amended bill, supported by the necessary proof.

If by further allegations and appropriate proof the case is brought within the principle of *Tompkins v. Levy, supra,* it is, in the opinion of the writer, immaterial what was the amount of annual premium paid on the policies  Of this opinion also are Justices Mc-Clellan and Thomas. A majority of the court, however, deny the validity and the controlling influence of *Tompkins v. Levy,* and the judgment of the court on this proposition is shown by the separate opinion of Justice Mayfield.

It results that the decree of the chancery court over-ruling the demurrrer to the bill was erroneous, and a decree will be here entered sustaining the demurrer upon the grounds noted above.

Reversed and rendered. All concur in the conclusion.

McCLELLAN, SOMERVILLE, and THOMAS, JJ., dissent in part.

MAYFIELD, J.—The opinion of Justice SOMERVILLE contains a sufficient statement of facts necessary to an easy comprehension of the questions decided. All the Justices concur in the conclusion that the decree appealed from must be reversed, but the majority do not concur in what is said in Brother SOMERVILLE'S opinion, which anticipates what would be the ruling in the event the bill is so amended as to bring it within the rule announced in the case of *Tompkins v. Levy, et al.,* 87 Ala. 263, 6 South. 346, 13 Am. St. Rep. 31, which rule is quoted in the minority opinion.

That part of the opinion quoted from *Tompkins v. Levy, supra,* is, we think, wholly dictum, for the reason that the court did not then have a case before it to which the statute (section 4502, present Code; section 2356, Code of 1886) was applicable. The court there correctly decided that the case before it did not fall within the protection of the insurance or exemption statute above referred to; and hence what was thereafter said as to what would be the effect of the attempted reservation of a benefit by the insured if the case was otherwise within the protection of the statute was wholly gratuitous, and not binding on the court or the parties, or on other persons. Moreover, if not dictum, we are unwilling to follow it. Justice SOMERVILLE seems to think—in fact, he says—that the result foreshad-

owed in the *Tompkins-Levy Case,* is rendered inevitable by virtue of our statute (section 4287), intimating that such dire result might not follow but for this statute. In this the minority we think are in error. The *Tompkin-Levy Case* was not based upon the statute, but was expressly placed on *"Twyne's Case,* decided near three centuries ago." As to what effect this statute had on the common law, see cases cited in note to section 4287 of the Code.

(2) Our pure exemption statutes, and particularly the statute as to exemptions in favor of the wife and children against the creditors of the husband or father, must be construed in pari materia with the statutes as to frauds and perjuries and fradulent conveyances. This has been repeatedly held, and, if a case falls within the exemption statutes, then it is not within, but is taken out of, the influence of the statute (section 4287). This has been repeatedly decided, as to both personalty and realty which is exempt, but which is conveyed with a reservation of benefit to the grantor, or in trust for the use of the debtor.—*Cox v. Birmingham Co.,* 125 Ala. 320, 28 South. 456, 82 Am. St. Rep. 238, and cases cited; *Frank v. Myers,* 97 Ala. 437, 11 South. 832.

Section 4502 of the Code, in part here material, provides: "The wife, in her own name, or in the name of a trustee, may insure the life of the husband for the benefit of herself, or for the benefit of herself and any child or children of the marriage. Or the husband or father may insure his life for the benefit of his wife, or for the benefit of his wife and children, or for the benefit of his child or children, and such insurance is exempt from liability for his debts or engagements, or for his torts, or any penalty or damages recoverable of him, if the annual premiums thereon do not exceed

seven hundred and fifty dollars; or if such premiums exceed seven hundred and fifty dollars, then to the extent of the insurance which an annual premium of seven hundred and fifty dollars would purchase as an ordinary life policy in a standard life insurance company."

(3) If the contract of insurance in this case falls within the protection of the above statute, as exempt to the wife, we are not willing to hold that it is taken without the staue by a provision in the nature of a condition subsequent, which condition is shown never to have happened during the life of the policy, and when the policy is wholly executed, and the money paid to the wife as the statute authorized, after the death of the husband. Nor are we willing to hold that such a provision, on its face, has the effect to render the contract of insurance absolutely void, so far as the wife is concerned, and to make it over for the benefit of the insured and his creditors. Such is not the reading of the contract, nor do we know of any statute or common-law principle which makes it such in law or in fact. We feel sure that section 4287 of the Code was not intended by the law makers to have such effect upon such insurance contracts, if they were otherwise brought within the influence of section 4502 of the Code.

The only allegation to show any fraud, in fact or in law, is as follows: "Each of said policies contained a stipulation whereby each of said insurance companies undertook and bound itself to pay to the said Lee R. Kimball, personally, certain amounts upon the expiration of a given number of years after the issuance of said policies; the said Lee R. Kimball thereby reserving unto himself a benefit in said policies."

It is not made to appear that the "given" number of years" ever "expired" (but it affirmatively appears that he never received any benefit from the insurance,) nor

that there was ever a moment when he could, under the contract of insurance, have received any such benefit therefrom; and we are not willing to hold that such a provision in a policy for the benefit of the wife is rendered absolutely void, or that it is converted into one for the benefit of the assured or of his creditors, if it is otherwise within the protection of the statute (section 4502 of the Code).

In speaking of the object and policy of section 4502 of the Code, and its progenitors, this court has said: "The policy of such legislation finds its origin in the duty of maintenance and protection which every husband owes to his family, and the importance to the state that as few widows and orphans as possible should be cast as paupers upon the public charity.—*Continental Life Ins. Co. v. Webb,* 54 Ala. 688; *Stone v. Knickerbocker Life Ins. Co.,* 52 Ala. 589. In *Fearn v. Ward,* 65 Ala. 33, we said that this statute was 'in the nature of a law exempting property from liability to execution.' It has been uniformly held in this state that exemption laws are to be liberally construed; and the application of this principle forbids the strict construction contended for by the counsel of the appellant. A similar statute prevails in the states of Illinois and Missouri, each, like our own, being copied substantially from the New York statute of 1840. So far as affects the question before us, the phraseology of these various laws seems to be essentially the same. The courts of these states have held that the statute is remedial in its character; that it is founded on charity, and intended to subserve a beneficent purpose; and that it is in the nature of, though not strictly, an exemption law, and, for these several reasons, that it should be liberally construed to effect the legislative policy contem-

plated in its passage."—*Felrath v. Schonfield*, 76 Ala. 202, 203, 52 Am. Rep. 319.

Cooley, in his Briefs on the Law of Insurance, says: "All the statutes bearing on the exemption of life policies or their proceeds seem based on the theory that, in the absence of an expressed contrary intent, the object of an ordinary life insurance policy should be considered as the protection of insured's family after his death, and that this object and desire is laudable and in accordance with public policy. They provide, in substance, that the proceeds of life insurance policies taken out for the benefit of certain classes of beneficiaries shall be free from the claims of creditors; but in some states insurance in excess of certain specified amounts, or procured while the insured was insolvent, is declared not exempt."—Volume 4, page 3795.

The object of statutes like ours, and their effect upon the various policies of life insurance, such as straight life, tontine, and those containing provisions to pay the insured, at stipulated periods, certain amounts, as the cash, or surrender, value of the policy, when the wife or the children are the beneficiaries, have been before the courts often, and the decisions are almost uniform in protecting the interests of the wife, children, or other dependents against the claims of creditors, if the case could, by liberal construction, be brought within the protection of the exemption statutes. Many of these cases may be found cited in notes to the cases of *National Bank v. Appel Co.*, 4 L. R. A. (N. S.) 456 et seq., and *McCutchen v. Townsend*, 16 L. R. A. (N. S.) 316.

The effect of the decisions as to the rights of creditors, even with the aid of the bankruptcy statutes, is thus summarized in the note in 16 L. R. A. (N. S.) 321: "While in a number of cases it has been held that

[Kimball, et al. v. Cunningham Hardware Company, et al.]

the specific provision of section 70a of the Bankruptcy Act [Act July 1, 1898, c. 541, 30 Stat. 565 (U. S. Comp. St. 1913, § 9654), above set forth, relating to policies of insurance having a cash surrender value, constitutes a limitation of the provision of section 6 that the Bankruptcy Act shall not affect the allowance to bankrupts of the exemptions prescribed by the state laws in force at the time of the filing of the petition (*Re Range* [D. C.] 91 Fed. 361; *Re Scheld,* 44 C. C. A. 233, 104 Fed. 870, 52 L. R. A. 188; *Re Holden* [114 Fed. 650, 52 C. C. A. 346] supra), there are decisions to the contrary (*Re Steele,* 44 C. C. A. 287, 104 Fed. 968; *Pulsifer v. Hussey* [97 Me. 434, 54 Atl. 1076] supra) ; and the question has finally been settled by the decision of the United State Supreme Court in *Holden v. Stratton,* 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, which holds that the proviso in section 70a of the Bankruptcy Act is operative only as to policies not exempt under state laws."

In the note in 4 L. R. A. (N. S.) 457, it is said: "A policy payable at the expiration of ten years, or at the death of the insured within that time, is held, in *Re Sawyer,* 2 Hask. 153, Fed. Cas. No. 12,393, to be within the protection of a statute providing that all life policies and money due thereon are exempt from attachment and all claims of creditors during the life of the insured when the annual cash premium does not exceed $150. The court said that this policy was to all intents a life policy, and the fact that, if the party should continue to live the ten years and pay up all his premiums, he would then be entitled to the amount of the insurance, was not sufficient to change the nature of the instrument so as to withdraw it from the exemption."

The cases found have been examined, and the above quotations seem to us to state the correct results in cases like the one before us.

Cases in which the proceeds of policies have been reached by creditors as a rule will be found to be cases in which the proceedings were had during the life of the insured, and when he had an existing and vested right in the policy of insurance, and not a mere contingent or expectant right, or where there was a clear intent to defraud the creditors, or where, for some other reason, the policy was not within the protection of the exemption statutes.

Of the cases of our own court, the nearest in point is *Young v. Thomason,* 179 Ala. 454, 66 South. 272. In that case the policy was for the benefit of the daughter, and was within the statute, but it contained a provision by which the insured could change the beneficiary, which, of course, would have allowed him to make him-self or his estate the beneficiary, but this provision was not exercised. The beneficiary, as in this case, was never changed. The policy was payable, and in fact was paid, to the daughter, as it was to the wife in the case at bar; and it was correctly ruled, we think, that there was no reservation of a benefit, nor secret trust, and that it was not within the statutes as to fraudulent conveyances.

It was also ruled in that case, following the decision of the Supreme Court of the United States in *Holden v. Stratton,* 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, which is before referred to, that policies within the exemption statutes were not within the bankruptcy statutes in favor of the assignees or creditors of the bankrupt. The policy contained provisions by which, in some events, the insured might be entitled to an interest in the proceeds of the policy of insurance.

[Brooks v. Greil Brothers Company, et al.]

In the opinion in *Young v. Thomason, supra,* that case, we think, is correctly distinguished from the cases of *Tompkins v. Levy,* 87 Ala. 263, 6 South. 346, 13 Am. St. Rep. 31, and *Fearn v. Ward,* 80 Ala. 555, 2 South. 114. Those cases were expressly held not to be within the exemption statutes originally, or the beneficiary had died before the insured, and the insurance statute could not therefore apply.

If the whole or any part of the proceeds of this policy should appear not to be within the exemption statute, then probably the whole, or the part not exempt, could be reached by the creditors, as was done in the cases of *Fearn v. Ward,* and *Tompkins, supra;* but we decline to now intimate a decision on this question.